UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                Case Number 17-20292

v.                                                Honorable David M. Lawson

JEREMY SHERROD,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Jeremy Sherrod has filed a motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Sherrod has served almost 47 months of a 120-month prison sentence for Hobbs Act robbery and firearms offenses. He argues that a sentence reduction is justified by his medical conditions (obesity, prediabetes, history of smoking, and being "born with pneumonia,") coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. Because Sherrod has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

Sherrod pleaded guilty to charges of Hobbs Act Robbery and conspiracy to commit the same, 18 U.S.C. § 1951(a); aiding and abetting the brandishing of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c); and possessing a firearm after having been convicted of a felony, 18 U.S.C. § 922(g). On April 16, 2018, The Honorable Avern Cohn sentenced him to concurrent terms of 36 months in prison on the robbery and felon-in-possession counts, and a

consecutive term of 84 months on the 924(c) offense.  He presently resides in the custody of the Bureau of Prisons at FCI McKean, in Lewis Run, Pennsylvania, which is a medium security facility that houses around 820 inmates.  Sherrod is 39 years old.  He has served approximately 47 months or around 40% of his cumulative 120-month custodial sentence.  Public records of the BOP indicate that the defendant is scheduled to be released from prison on November 28, 2025.

The most recent data disclosed by the BOP indicates that there are three active coronavirus cases among inmates and none among staff at the McKean facility, although 454 inmates and one staff member previously were diagnosed and now have recovered.  Reports indicate that no inmates have died.  *See* https://www.bop.gov/coronavirus/.  The BOP also recently began reporting data on the number of COVID-19 vaccinations that it has administered to staff and inmates.  The available data indicate that 10 staff and 330 inmates fully have been vaccinated at the McKean facility.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'"  *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate release."  *Ibid.*  "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'"  *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Sherrod relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Sherrod contends that he has several medical conditions that subject him to an elevated risk of complications from the highly-contagious novel coronavirus. He asserts that his obesity, prediabetes, status as a former smoker, and infantile pneumonia all aggravate his medical risk.

In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6. And

the defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control &

Prevention (June 25, 2020), https://bit.ly/2WBcB16). It is appropriate for the Court to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 984 F.3d at 521.

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, list two of the defendant's asserted medical conditions as recognized serious medical risk factors. *See* CDC Risk Factors: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 19, 2021). The CDC guidance identifies as risk factors both obesity, which is defined as having a body mass index (BMI) over 30, and being a current or former smoker. The defendant's medical records noted his weight at 305 pounds at a June 2020 exam, and he is 5'6" tall. Medical Notes dated Sept. 23, 2019, ECF No. 146-3, PageID.864; Notes dated June 9, 2020, ECF No. 146-2, PageID.796. Those figures correspond to a BMI of 49.2, well in excess of the obesity threshold of 30, which the government concedes is a recognized serious medical risk factor.

The defendant's asserted history of smoking is substantiated only by his statement in a request for release that he "smoked for twenty plus years." Letter dated Nov. 18, 2020, ECF No. 140-2, PageID.708. Sherrod is nearly 40 years old, and there is no indication when he stopped smoking. Smoking has been prohibited by official policy in all BOP facilities since at least 2015, and the defendant does not assert that he presently smokes. The defendant's medical records do not note any present diagnosis of any medical condition associated with his former habit. Moreover, notes from a November 2020 exam indicated respiration "within normal limits," and "no shortness of breath." Medical Notes dated Nov. 10, 2020, ECF No. 146-2, PageID.774. In the absence of any indications that Sherrod's former smoking has some present effect on his health,

the fact that the defendant previously smoked during an unspecified remote period does not sufficiently suggest that he presently faces any tangible serious health risk. *See United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *3 (E.D. Mich. Dec. 10, 2020) ("[It is unclear how much of a role] the defendant's former status as a smoker [may play in assessing his medical risk]. The CDC advises that people who smoke or have a history of smoking 'are at an increased risk of severe illness' from COVID-19. Although Lamar's medical records reflect that he used to smoke, no details are provided about his smoking history, nor, according to the government, is he currently allowed to smoke inside FCI Morgantown.") (citations omitted).

The defendant's asserted history of being "born with pneumonia" is not a recognized serious medical risk factor under the currently published CDC guidelines, which does not list a prior diagnosis of pneumonia as indicating any elevated medical risk. Similarly, the defendant's "prediabetic" condition also is not a recognized medical risk. *United States v. Bender*, No. 18-20183, 2021 WL 289654, at *3 (E.D. Mich. Jan. 28, 2021) ("The defendant's 'prediabetes' does not provide an extraordinary and compelling reason for his release because '"prediabetes" does not denote a diagnosed diabetic condition. Instead, it indicates merely the presence of higher than normal blood sugar which may make it more likely that a person will develop Type 2 diabetes.'" (quoting *United States v. Simmons*, No. 18-20270, 2020 WL 4816199, at *2 (E.D. Mich. Aug. 19, 2020); citing WebMD: Types of Diabetes, https://www.webmd.com/diabetes/guide/types-of-diabetes-mellitus)).

Another highly pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears to be nil. Recent reports indicate that the probability of infection at McKean, although once quite high, now is very low, with only three active cases among inmates, and no active infections among staff. The defendant

has two recognized medical risk factors, but, in the absence of any active coronavirus cases among inmates at his facility, he has not sufficiently established that he presently faces an extraordinary and compelling medical risk that warrants his release.

But for his obesity, the defendant, a relatively young inmate, has no other tangible serious risk factors, and he faces at present an apparently remote probability of infection. "'[O]n similar facts this Court has declined to order the release of otherwise healthy . . . inmates with obesity as their only cognizable risk factor, absent other indications of serious medical risk,' particularly where they were confined at institutions with few or no active coronavirus cases." *United States v. Shumaker*, No. 18-20286, 2021 WL 289653, at *4 (E.D. Mich. Jan. 28, 2021) (collecting cases). "There are no distinguishing facts here that warrant a different result, particularly in light of the relatively low risk of infection." *Ibid.*

C.

Because the defendant has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not discuss the relevant section 3553(a) factors.

III.

Sherrod has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 139) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: March 8, 2021